Margaret M. Cronin, Plaintiff-Appellee, v. William A. Brownlie, Defendant-Appellant.

Gen. No. 10,614.

Opinion filed December 5, 1952. Released for publication December 23, 1952.

RATHJE & WOODWARD, of Wheaton, for appellant; JOHN S. WOODWARD, of Wheaton, of counsel.

THOMAS H. PRICE, of Elmhurst, for appellee.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Margaret M. Cronin, plaintiff appellee, received personal injuries arising out of her slipping on an icy sidewalk on the premises of her landlord, William A. Brownlie, defendant appellant. She recovered a judgment in the circuit court of DuPage county based on a verdict of a jury in the sum of $2,500 against the defendant. Motions on behalf of the defendant for a directed verdict and for judgment notwithstanding the verdict were overruled by the trial court and this appeal follows.

The defendant contended in the trial court and assigns as error here that as a matter of law the plaintiff failed to establish that she was free from contributory negligence and that the defendant was negligent.

The undisputed evidence discloses that the defendant owned a four-apartment building in Elmhurst, Illinois; that the plaintiff had lived in one of the apartments under a written lease for several years; that the defendant, who also lived in one of the apartments, had no janitor but performed the ordinary janitor services himself; that there was a cement sidewalk 160 feet long and 30 inches wide extending from the front entrance of the apartment to York Street; that the sidewalk was in a good state of repair and had no structural defects; that this sidewalk was used by all of the persons living in the building; that there was no provision in the lease that the landlord should keep the ice and snow off the sidewalks; that there was a small light burning at night outside the door at the entrance to the apartment; that a street light on York Street did not light up the entrance sidewalk; that on and prior to February 6, 1949, there was ice all over the city of Elmhurst and the plaintiff had used the sidewalk in question on several occasions prior to Saturday, February 5, 1949, at all of which times the sidewalk was in an icy condition due to natural accumulations of ice and snow.

Margaret M. Cronin testified in substance that when she left her apartment about 1:30 p. m. on February 5, 1949, the ice was frozen thick on the entrance sidewalk; that the ground was covered with snow in that area; that a Mr. Berry came up to the apartment entrance and together they walked down the sidewalk to an automobile; that he did not assist her; that she was wearing black suede dress shoes with heels about an inch and one-half high; that she had no galoshes or

450

rubbers on; that the occasion of her leaving the house was to attend a wedding reception; that at the reception she had not more than three cocktails containing whiskey; that she had the last drink several hours before she returned home; that some friends brought her to the York Street entrance of her apartment in an automobile about 1:30 Sunday morning, February 6; that the condition of the sidewalk was the same as when she walked on it in the afternoon; that the sidewalk from the apartment to the street was a glaze of ice; that there was snow some six to ten inches high adjacent to the sidewalk; that when she came within about fifteen feet of the apartment doorway, while walking on the sidewalk, she slipped and fell on the ice; that her leg was broken as a result of the fall. She further testified that the ice was rough but was in the same rough condition on all the sidewalk on the night she returned to her apartment; that no one escorted her from York Street to her apartment on her return; that she had been back and forth on the sidewalk to her home three times on Friday and the ice was the same as it was on Saturday and on Sunday morning; that she did not know whether or not anyone had shovelled the snow off the sidewalk from Friday to Sunday morning.

Clement Cuthbert testified that he was one of the tenants in the apartment building; that he observed the sidewalk from Friday, February 4, through Sunday, February 6; that Friday afternoon it had sleeted and then it froze Friday night and on Saturday it snowed and covered the ice with snow and on Saturday night he "noticed it was icy over the snow" and he "swept the sidewalk so that people using it would at least see the ice on it." He further testified that the sidewalk was in the same condition Saturday evening that it was on Friday evening—"nothing but ice."

451

William A. Brownlie, the defendant, testified that on February 3, it snowed and he shovelled the snow off the walk; that after he had shovelled the walk on February 3, it was icy; that he also shovelled it on February 4; that he used no salt or ashes on the sidewalk; that he could not get the ice off the sidewalk; that on February 4 he left for Detroit and did not return until Sunday evening about 6:30; that when he left for Detroit his tenant, Mr. Cuthbert, said he would take charge of clearing the sidewalk during his absence; that he did not pay Cuthbert for his services.

The evidence further discloses that prior to the time of the injury the plaintiff was in good health and that on the day of the trial she had fully recovered from her broken leg. It is further disclosed by the record that during the period in question no one put any salt or sand on the sidewalk in question.

Charles L. Berry testified that he called for the plaintiff on Saturday, February 5, about 1:30 p. m.; that he met her at the front door of the apartment and they walked to York Street on the sidewalk; that "the sidewalk from the building to the street was a glaze of ice," and there were no ashes or salt on the sidewalk and the "sidewalk was just a sheet of glass.".

██ The first question presented here is whether or not the landlord defendant owes any duty to the plaintiff tenant to remove ice and snow accumulated from natural causes on the sidewalk used to enter the building. It follows, of course, that if no legal duty exists, there can be no negligence. We find no cases in Illinois exactly in point. The authorities throughout the country appear to be divided. The cases on the subject collected in ALR are: 25 ALR 1273; 39 ALR 294; 58 ALR 1411; 75 ALR 154; 97 ALR 220.

██ The law is settled in this State that a city is not liable for injuries resulting from the slipperiness

452

of its streets and sidewalks caused by the presence of ice and snow accumulated as a result of natural causes. (*Strappelli v. City of Chicago*, 371 Ill. 72.) The basis of this rule of law is that it is unreasonable and impractical to compel a city in our climate to perform the labor necessary to remove ice and snow from its streets and sidewalks to keep them safe for travel. If the accumulation is caused by some defect of the street or sidewalk and this creates the dangerous condition, then a city may be liable. (*Graham v. City of Chicago*, 346 Ill. 638.) The rule denying liability of cities on grounds of unreasonableness and impracticability while not decisive of the issues here is in some measure pertinent. The authorities in jurisdictions on the question of where there is a duty on the landlord who has rented the premises to several tenants to remove natural accumulations of ice and snow on steps or sidewalks, which have resulted in injuries to tenants by slipping are not in harmony. From an examination of cases cited in the above ALR notes and cases reviewed in this opinion, the weight of authority is that there is no such duty. The courts of Massachusetts, Ohio, New York, Maine, and Washington hold that there is no duty of a landlord in the absence of a special agreement to remove accumulations of ice and snow due to natural causes from the sidewalks, steps, or driveways which are used in common by several tenants of an apartment building. (*Boulten v. Doorington*, 302 Mass. 407, 19 N. E. (2d) 731; *Gibson v. Prudential Ins. Co.*, 283 N. Y. 647, 28 N. E. (2d) 43; *Turoff v. Richman*, 76 Ohio App. 83 (1944), 61 N. E. (2d) 486; *McNeill v. Home Savings Bank*, 313 Mass. 664, 48 N. E. (2d) 695; *Oerter v. Ziegler* (1910), 59 Wash. 421, 109 Pac. 1058; *Rosenberg v. Chapman Nat. Bank*, 126 Me. 403, 139 Atl. 82, reported in 58 ALR 1405; Corpus Juris Secundum, Vol. 52, p. 46, par. 417.)

The minority rule holding that there may be liability is followed in New Hampshire and Connnecticut. (*United Shoe Machine Corporation v. Walter L. Paine,* 26 F. (2d) 594; *Reardon v. Shimelmann,* 102 Conn. 383, 128 Atl. 705, reported also in 39 ALR 287.)

In the *Turoff* case the plaintiff tenant was injured by slipping on ice and snow on a driveway on the leased premises. This driveway had been covered for some time by ice and snow due to natural causes. The landlord had not cleared the driveway which had been used by the tenant plaintiff and other tenants in the leased apartments on several occasions prior to the time of her injury and she was well aware of its slippery condition. The court held that a different rule should not be applied to the landlord than the non-liability rule of a city and says:

". . . In cases where there is no act on the part of the landlord creating a greater danger than was brought about by natural causes the dangers that are created by the elements such as forming of ice and the falling of snow, are universally known and unless the landlord has contracted to provide against these dangers all persons on his property must assume the burden of protecting themselves therefrom.

"This rule which is sustained by the greater weight of authority, is stated as follows in 25 A.L.R. 1301: 'Ordinarily, the landlord of premises leased to different tenants who use in common the approaches thereto, and the halls and stairways, is not liable for accumulations of snow and ice due to natural causes and hence is not liable for injuries to persons using these portions of the premises, due to accumulations of this character.'

"Also, in the case of Oerter v. Ziegler, 1910, 59 Wash. 421, 109 P. 1058 on page 1059, the court said: 'On the other hand the weight of authority holds that,

454

where different portions of a building are leased to different tenants, the landlord must use due diligence to keep the passageways, and such parts of the building as are used by the different tenants in common, in a reasonably safe condition, and is liable in damages for failure so to do. 18 Am. Enc. of Law (2d Ed.) P. 220. This obligation, however, only extends to general repairs and does not impose on the landlord a liability for injuries resulting from temporary obstructions arising from natural causes, such as the accumulation of ice or snow. Woods v. Naumkeag Steam Cotton Co., 134 Mass. 357, 45 Am. Rep. 344; Purcell v. English, 86 Ind. 34, 44 Am. Rep. 255; Sawyer v. McGillicuddy, 81 Me. 318, 17 A. 124, 3 L.R.A. 458, 10 Am. St. Rep. 260.' ''

In the above case the court held the plaintiff could not recover and that the trial court erred in not directing a verdict for defendant.

In *Boulton v. Doorington,* 302 Mass. 407, 19 N. E. (2d) 731, the plaintiff tenant was injured in a fall from an icy porch on premises leased to him. The porch was also used by other tenants in the same building. The ice was caused by the general weather conditions of sleet and snow falling upon it. The court held that a verdict was properly directed for the defendant as injuries arose as a result of accumulations of ice and snow from natural causes and there was no duty on the landlord from the relation of landlord and tenant to remove the same.

In the *McNeill* case above cited the Supreme Court of Massachusetts held that there was no liability of the landlord living in an apartment on the premises to remove ice and snow causing slippery conditions from an alleyway commonly used by several tenants. Plaintiff was travelling on a path that had been cleared of snow by the janitor of the landlord but in a depres-

sion some water had collected and had frozen forming ice on which the plaintiff slipped causing the injury. The court held the plaintiff could not recover and that the trial court should have directed a verdict for the defendant. The court in passing on the question urged by plaintiff that the janitor of the landlord by clearing the path of snow had created a duty to keep it clean and hence plaintiff had a right to rely on this said:

". . . If the evidence was sufficient to warrant a finding that the defendant had undertaken the work of clearing a path from the store to the street, there is 'nothing to that effect within the contract of hiring either as a part of its original terms or by modification thereof, and hence the obligation was gratuitous, and the defendant was not liable unless *** its failure to remedy the dangerous condition was evidence of gross negligence.' Bell v. Siegel, 242 Mass. 380, 382, 136 N. E. 109, 110, 25 A.L.R. 1261."

In our northern climate where ice and snow come frequently and are accepted by all, it appears to us that the rule adopted by the majority of the States finding no liability against the landlord is more reasonable and persuasive than the minority view. Applying the majority rule to the facts in the instant case, it appears to us to be unreasonable and somewhat impractical to require a landlord to remove ice and snow from sidewalks used jointly by his tenants where the ice and snow arise from natural causes. Appellee contends that at times the landlord had removed the snow from the sidewalks and that this fact in itself created a legal duty and hence his failure to remove the ice from the sidewalk was negligence. If the plaintiff had relied upon this, this contention might be persuasive. The evidence in the record discloses that at the time the appellee left the apartment and for several days prior thereto, there was ice on the sidewalk and no one

456

had made any effort to remove it. It appears that she did not rely on or expect the ice to be removed from the sidewalk and on the morning of her injury the ice was still there and in the same condition as when she left her apartment. As said in the *McNeill* case, what the defendant did in cleaning the snow off was a mere gratuity and did not create a legal duty. As there was no legal duty to remove the ice and snow such duty did not arise from the facts that he had heretofore cleared the snow from the sidewalk. We find that the defendant was not negligent as a matter of law.

Appellant urges that regardless of the question of the negligence of the defendant the plaintiff cannot recover because she was guilty of contributory negligence as a matter of law. Counsel for both parties cite *Blumberg v. Baird*, 319 Ill. App. 642, 1st. Dist. (Abstract decision) as supporting them. In this case the plaintiff tenant of an apartment building suffered injuries by slipping on steps leading from her third-floor apartment to the ground. She brought suit against her landlord and obtained a verdict. The handrail and steps were covered with ice. The janitor of the building had cleared the steps three or four times prior to the accident. The plaintiff tenant had observed the condition of the handrail and steps but proceeded nevertheless and slipped on the first step and received injuries. The Appellate Court held that her use of the steps knowing of their dangerous condition was contributory negligence as a matter of law and that the trial court should have granted defendant's motions for a directed verdict or a judgment nothwithstanding the verdict. On examination of this case we do not believe that the court held that defendant was or was not guilty of negligence. The judgment was reversed on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The court said:

"It must be conceded, of course, that the question of contributory negligence is ordinarily one of fact for the jury, but the law is equally well settled that where there is no conflict in the evidence and where the facts are not in dispute, the question becomes one of law for the court. Beidler v. Branshaw, 200 Ill. 425. As heretofore indicated, one who blames another for an injury must allege and affirmatively prove that he himself was in the exercise of due care and caution for his own safety, and we think plaintiff's conduct, whether it be characterized as the assumption of risk of the hazards and dangers of the condition of the back stairway, which were plain, open and obvious to her, as defendant argues, or contributory negligence, the fact remains that plaintiff was fully as cognizant of the slippery condition of the back stairway, and probably more so, than the defendant or anyone in his employ, and was therefore charged with a duty equally as great as that sought to be imposed upon defendant. As was stated in Sanders v. Smith, 25, N. Y. Supp. 125, 'To require the defendant to pay her (plaintiff) for her injuries would be to require the defendant to take better care of the plaintiff than she should take of herself.' "

██ We are aware that the question of contributory negligence is one peculiarly for the jury to determine. The court is required to follow the verdict of the jury on this question and is not permitted to set aside the findings of the jury and enter a judgment notwithstanding the verdict unless it is established from a review of all the evidence considered in its aspects most favorable to the plaintiff that there is total failure of the plaintiff to prove that she was exercising due care and caution for her own safety. (*Illinois Central R. Co. v. Oswald,* 338 Ill. 270.)

██ The facts in the instant case are quite parallel to the facts in the *Blumberg* case above mentioned

where the court held the contributory negligence of the plaintiff prevented her recovery. In the instant case the plaintiff, being fully aware of the icy condition of the sidewalk, attempted to walk on it at night. The evidence further discloses that she wore dress shoes with high heels and did not wear either rubbers or galoshes to make her footing more secure. As a result of this she sustained her injury. She exposed herself to a known danger knowing all the risks incident thereto. She assumed the risk of the action which caused her injury. As aptly stated in *Sanders v. Smith,* 5 Misc. 1, 25 N. Y. Supp. 125 and quoted in the *Blumberg* case above mentioned and quite parallel to the factual situation here: "To require the defendant to pay her (plaintiff) for her injuries would be to require the defendant to take better care of the plaintiff than she should take care of herself."

Giving full credence to all the testimony in the record on behalf of the plaintiff, it appears to us that the plaintiff did not use that proper care, prudence, and foresight that was required of her and that the lack of the same was the proximate cause of her injury and hence she was guilty of contributory negligence as a matter of law and should not recover.

For these reasons the trial court was in error in refusing to direct a verdict in favor of the defendant at the close of plaintiff's case and likewise erred in refusing to grant defendant's motion for judgment notwithstanding the verdict for the plaintiff.

*Judgment reversed.*